## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT K. ALDERMAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>MCNEIL-PPC, INC.,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert K. Alderman, on behalf of himself and all others similarly situated, alleges the claims set forth herein.  Plaintiff s claims as to himself and his own actions, as set forth in   12, are based upon his personal knowledge.  All other allegations are based upon information and belief pursuant to the investigation of counsel.

## I.
## JURISDICTION AND VENUE

1.      Plaintiff brings this class action under Section 16 of the Clayton Act for injunctive relief as well as reasonable attorneys   fees and costs with respect to injuries sustained by Plaintiff and members of the Class arising from violations by Defendant of the federal antitrust laws, including Section 2 of the Sherman Act, 15 U.S.C.   2.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C.   1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.   1367.

3.      Venue is proper in this judicial district pursuant to 15 U.S.C.   22, 28 U.S.C.   1391(b) and (c), and 28 U.S.C.   1407, in that Defendant does business in this judicial district.

## II.
## NATURE OF ACTION

4.        This case is based upon Defendant McNeil-PPC, Inc. s ( McNeil  or  Defendant ) anti-competitive scheme to manipulate federal patent and drug regulation laws in order to extend patent protection for its Imodium  Advanced product  the leading anti-diarrheal/anti-flatulent drug sold.

5.        Through  repeated erroneous representations, failure to disclose relevant prior art, and overall persistence in prosecuting exceeding obvious  inventions,  McNeil deceived the U.S. Patent and Trademark Office ( PTO ) into issuing a series of patents for an anti-diarrheal/anti-flatulent pharmaceutical. McNeil-PPC, Inc. v. L. Perrigo Co., No. 01-1100, slip op. at 15 (E.D. Pa. June 25, 2002) ( McNeil ).

6.        After receiving the patents and gaining exclusive Federal Drug Administration ( FDA ) approval, McNeil started marketing the anti-diarrheal/anti-flatulent drug under the name Imodium  Advanced.  McNeil has sold over a hundred million dollars of Imodium  Advanced.

7.        This Court called Defendant s actions before the PTO  a scheme for extending the life of a drug about to go off patent, and McNeil executed this scheme without the slightest regard for the intent and purposes of the patent laws.  Indeed, McNeil s sole motive was to compromise these statutes and constitutional protections for the sake of profits.   McNeil, slip op. at 15.

8.        On or about June 25, 2002, the Court declared relevant claims of McNeil s patents for Imodium  Advanced invalid for obviousness.

9.        This class action is brought under federal and state antitrust laws, state consumer protection laws, and state common law seeking damages and declaratory and injunctive relief on behalf of Plaintiff Robert K. Alderman ( Plaintiff ) as representative of a proposed class of all persons, or assignees of such persons, who indirectly purchased Imodium Advanced, other than for resale, from McNeil in the United States and its territories ( the Class ) during the period March 7, 2001 to present (the  Class Period ).

10.           Plaintiff alleges Defendant has unlawfully extended its monopoly in the

U.S. Imodium   Advanced market by improperly filing a series of patents for discovery and

invention already established by prior art in order to prevent generic manufacturers such as

Perrigo Company ( Perrigo ) from entering the Imodium   Advanced market.  These patents

include: U.S. Patent No. 5,248,505 (the     505 patent ) issued on September 28, 1993; U.S.

Patent No. 5,612,054 (the     054 patent ) issued on March 18, 1997; U.S. Patent No. 5,679,376

(the     376 patent ) issued on October 21, 1997; and U.S. Patent No. 5,716,641 (the   641

patent ) issued on February 10, 1998.

11.           As a direct and proximate result of Defendant s unlawful conduct,

consumers and third-party payors ( End-Payors ) throughout the United States have been denied

the benefits of free and unrestrained competition in the Imodium   Advanced market.  More

specifically, Plaintiff and members of the Class have been denied the opportunity to choose

between the Imodium   Advanced brand name product and a lower priced generic alternative that

would have cost 30 to 40 percent less.

12.           The laws governing pharmaceutical products are meant to balance the

competing policy goals of providing new product innovators an economic return on their

investments while also ensuring consumers access to additional and more affordable generic

versions of brand-name products.  Defendant has caused Plaintiff and members of the Class to

sustain an injury to their business or property by thwarting the intention of the law governing

pharmaceutical products in order to force these End-Payors to pay supracompetitive prices for

Imodium   Advanced.

### III.
### PARTIES

13.           Plaintiff Robert K. Alderman ( Plaintiff ) is a resident of California.

Mr. Alderman paid for Imodium   Advanced in California during the class period other than for

resale and was injured by the illegal conduct alleged herein.

14.           Defendant McNeil-PPC, Inc. ( McNeil  or   Defendant ) is a New Jersey

corporation with its principal place of business in Fort Washington, Pennsylvania.  McNeil sells

S:\WordProc\imo\001_IMO.doc

a range of over-the-counter and prescription pharmaceuticals, including Imodium   Adanced.

McNeil is a division of Johnson & Johnson.

15.         Various persons, partnerships, sole proprietors, firms, corporations, and

individuals not named as defendants in this lawsuit, the identities of which are presently

unknown, may have participated as co-conspirators with Defendant in the offenses alleged in this

complaint, and have performed acts and made statements in furtherance of the alleged

conspiracy to monopolize.

16.         The acts alleged in this Complaint to have been done by Defendant were

authorized, ordered, and performed by its parents, officers, directors, agents, employees,

representatives, or subsidiaries while engaged in the management, direction, control, or

transaction of its business affairs.

**IV.**
**CLASS ALLEGATIONS**

17.         Plaintiff brings this action on behalf of himself and the following Class of

End-Payors:

> All persons and entities in the United States who, at any time from
> March 7, 2001 to the present, purchased Imodium   Advanced in
> the United States other than for resale.  Excluded from the Class is
> the Defendant, its parents, subsidiaries, and affiliates, all
> government entities, all judges or justices assigned to hear any
> aspect of this litigation, and any person or entity that purchased
> Imodium   Advanced directly from Defendant.

18.         The Class is so numerous that joinder of all members is impracticable.

While the exact size of the Class is unknown to Plaintiff at the present time, the members of the

Class are believed to number in the thousands.

19.         Common questions of law and fact exist as to all members of the Class.

Among those questions are the following:

a.                 whether Defendant unlawfully monopolized the U.S. market for

Imodium   Advanced drug products;

b.                 whether Defendant  s conduct delayed the marketing of generic

Imodium Advanced products in the United States from March 7, 2001 to the present;

  c.     whether Defendant s unlawful conduct caused Plaintiff and the other Class members to pay more for Imodium Advanced drug products than they otherwise would have paid;

  d.     whether Defendant s conduct, as alleged herein, violated the state antitrust and unfair trade practices laws set forth in Counts II and III herein;

  e.     whether Defendant has monopoly power in the relevant market for purposes of Plaintiff s monopolization claims;

  f.     whether Defendant unjustly enriched itself to the detriment of Imodium Advanced End-Payors, thereby entitling Plaintiff and the other Class members to disgorgement of all benefits derived therefrom;

  g.     the appropriate measure of damages incurred by the Class; and

  h.     whether the Class is entitled to injunctive and other equitable relief.

  20.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting only individual members.

  21.    Plaintiff s claims are typical of the claims of the members of the Class because Plaintiff and all other Class members sustained damages in the same way, as a result of Defendant s wrongful conduct complained of herein, and the claims of each Class member arise out of the same nucleus of operative facts and are based on the same legal theories.

  22.    Plaintiff will fairly and adequately protect the interest of the other Class members. Plaintiff has retained counsel who are experienced in class action and antitrust litigation, and Plaintiff has no interest in this litigation that is adverse to or in conflict with the interest of the other members of the Class.

  23.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by many members of the Class are expected to be relatively small, so that the expense and burden of prosecuting an antitrust damages case such as this one will almost certainly preclude individual litigation by such

members.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

**V.**
**INTERSTATE TRADE AND COMMERCE**

24.       At all times relevant herein, Defendant manufactured, marketed, and sold substantial amounts of Imodium  Advanced in a continuous and uninterrupted flow of interstate commerce.  Defendant utilized the United States mails and interstate telephone lines as well as means of interstate travel in order to effectuate its scheme to monopolize the Imodium Advanced market. The illegal monopolization and attempt to monopolize the market for Imodium  Advanced has, therefore, substantially affected interstate and commerce.

**VI.**
**OPERATIVE FACTS**

**A.       Federal Regulation of Prescription Drugs**

**1.       New Drug Applications**

25.       The statute regulating the manufacture and distribution of drugs and medical devices in the United States is the Federal Food, Drug and Cosmetic Act, 21 U.S.C.  301 *et seq*. (the  FD&C Act  ).  Under the FD&C Act, approval by the FDA, the governmental body charged with regulation of the pharmaceutical industry, is required before a company may begin selling a new drug in interstate commerce in the United States.  21 U.S.C.  355(a).  Pre-market approval for a new drug must be sought by filing a new drug application (  NDA  ) with the FDA under  355(b) of the FD&C Act demonstrating that the drug is safe and effective for its intended use.

26.       New drugs that are approved for sale in the United States by the FDA are typically covered by patents, which provide the patent owner with the right to exclude others from making, using or selling that new drug in the United States for the duration of the patents, plus any extension of the original patent period granted pursuant to the Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C.  355 (  Hatch-Waxman Act  ).

27.       Pursuant to 21 U.S.C.  355(b), in its NDA the pioneer drug manufacturer

must list all patents that claim the drug for which FDA approval is being sought, or that claim a method of using the drug, and with respect to which a claim of patent infringement could reasonably be asserted against an unlicensed manufacturer or seller of the drug.

28.        Once the NDA is approved, any claimed patents are listed with the NDA in a publication known as the Approved Drug Products With Therapeutic Equivalence Evaluations.  This publication is commonly called the Orange Book.

29.        Pursuant to 21 U.S.C.  355(c)(2), if, after its NDA is approved, the pioneer drug manufacturer is issued a new patent that claims the drug or methods of its use, the company must supplement its NDA by listing such new patent within 30 days of issuance, whereupon the FDA publishes the new patent in a supplement to the Orange Book.  The FDA is required to accept as true patent information it obtains from patent holders, such as whether a patent covers a particular drug product.  If an unscrupulous patent holder is willing to provide false information to the FDA to delay the onset of generic competition, the FDA is powerless to stop it.

        2.        **Generic Drugs**

30.        Generic drugs are drugs that the FDA has found to be bioequivalent to their corresponding brand-name drug.  A generic drug provides the identical therapeutic benefits as its brand-name counterpart.

31.        Generic drugs are invariably priced substantially below the branded drugs to which they are bioequivalent.  Typically, the first generic drug is sold at a substantial discount to the brand name drug, followed by steeper discounts as more companies begin selling the generic.  The beneficiaries of this competition are the patients and third-party payors who pay the retail price of drugs sold by pharmacies.

32.        Virtually all third-party payors encourage patients to use generic drugs by, among other things, requiring lower co-payments from members who receive generics.

33.        Moreover, if a lower-priced generic version of a brand-name drug exists, and the physician has not specifically indicated on the prescription dispense as written (or a similar instruction), and the consumer is covered by a typical third-party payor plan, the

pharmacist will substitute, or at least offer to substitute, the generic drug.

34.          The branded drug generally loses substantial sales to generics within a relatively short time, primarily as a result of cross-overs to lower-priced generics by patients, including patients in third-party payor plans.

**3.          Abbreviated New Drug Applications ( ANDAs ) For Generic Drugs**

35.          Under the Hatch-Waxman Act, a generic drug manufacturer may seek expedited FDA approval to market a generic version of a brand-name drug with an approved NDA by filing an Abbreviated New Drug Application ( ANDA ) pursuant to 21 U.S.C. 355(j).  An ANDA relies on the safety and efficacy data already filed with the FDA by the manufacturer of the brand-name drug.

36.          The Hatch-Waxman Act permits ANDA applicants to perform all necessary testing, submit an application for approval, and receive tentative approval before the relevant patents expire.  Prior to the Hatch-Waxman Act, a generic applicant had to wait until all patents had expired prior to beginning the approval process or otherwise face an infringement suit.

**B.          Defendants  Illegal, Monopolistic Conduct**

37.          Loperamide hydrochloride ( loperamide ) is a non-addictive opiate.  It is used to treat diarrhea.  Scientists and doctors believe loperamide treats diarrhea by regulating muscular contractions in the intestine, limiting secretions in the intestinal tract, and relieving abdominal discomfort.

38.          Simethicone is an oily liquid substance used to treat flatulence associated with diarrhea.

39.          The anti-diarrheal/anti-flatulent drug Imodium  Advanced contains both loperamide and simethicone.  Imodium  Advanced s predecessor drug, Imodium  A-D, contains the anti-diarrheal loperamide, but does not contain the anti-flatulent simethicone.

40.          When first marketed and sold in 1988, a number of patents for loperamide (the  loperamide patents ) protected Imodium  A-D from generic competition.  Upon expiration of the loperamide patents, Imodium  A-D faced intense competition from generic manufacturers

that sold a generic version of Imodium A-D for approximately 30% to 40% less than the price McNeil charged.

41.         Upon expiration of the loperamide patents in the late 1980 s, generic manufacturer L. Perrigo Company ( Perrigo ) began marketing a generic brand of loperamide similar to that of Imodium A-D.

42.         In response to the generic competition it faced for Imodium A-D, McNeil directed one its scientists, Dr. Jeffrey Garwin, to develop a new patent-protected form of loperamide. Pursuant to this directive, Dr. Garwin developed a drug that combined loperamide with the anti-flatulent simethicone.

43.         Pursuant to McNeil s scheme, Dr. Garwin filed patent applications with the PTO to claim the combination of loperamide and simethicone. During the course of the prosecution of the patents, McNeil represented to the PTO that Dr. Garwin had discovered the concurrence of diarrhea and flatulence; McNeil and Dr. Garwin thus claimed that the invention to be awarded patent protection lies not in the discovery of a novel solution to this problem, but in the discovery of the problem itself. McNeil, slip op. at 4. Based upon Defendant s representations, the PTO award Dr. Garwin U.S. Patent No. 5,248,505 (the 505 patent ) on September 28, 1993 and U.S. Patent No. 5,612,054 (the 054 patent ) on March 18, 1997.

44.         Subsequently, the PTO issued two additional patents for the combination of loperamide and simethicone, U.S. Patent No. 5,679,376 (the 376 patent ) issued on October 21, 1997, and U.S. Patent No. 5,716,641 (the 641 patent ) issued on February 10, 1998. Since their issuance, the 505, 054, 376, and 641 patents all have been declared invalid.

45.         Beginning in October, 1997, McNeil manufactured, marketed, and sold the drug combination of loperamide and simethicone under the brand name Imodium Advanced.

46.         Defendant marketed Imodium Advanced as a significant advancement over Imodium A-D, spending approximately $45 million to convince consumers to buy its drug. Imodium Advanced had no generic competition. Imodium Advanced s sales skyrocketed in

its first years on the market, and are projected to reach $200 million by the end of 2002.

47.        Interest in a generic version of Imodium  Advanced began almost immediately after McNeil introduced it.  Pursuant to this interest, Perrigo consulted outside patent counsel as to whether Perrigo  s version of loperamide-simethicone would infringe the Imodium  Advanced patents.  Perrigo  s patent counsel concluded the proposed generic version of loperamide-simethicone would not infringe the Imodium  Advanced patents because these patents were invalid.

48.        On or about November 2000, Perrigo filed an ANDA seeking FDA approval to manufacture, market, and sell a generic version of Imodium  Advanced in the United States.

49.        Facing the threat of losing their exclusive loperamide-simethicone Combination Product Sales, Defendant filed suit against Perrigo, alleging patent infringement. On April 22, 2002, this Court began to hear testimony in the trial of McNeil  s patent infringement suit against Perrigo.  On or about June 25, 2002, this Court invalidated claims 14 and 16 of the   505 patent and claim 15 of the   054 patent for obviousness.

50.        In examining Defendant  s representation made during the patent application to the PTO, this Court found the following:

a.        With respect to Defendant  s representation that Dr. Garwin had discovered the concurrence of diarrhea and flatulence, this Court found that Defendant failed to bring to the PTO  s attention the existence of more than twenty scientific and medical articles and publications that noted the concurrence of diarrhea and gas-related symptoms and were published before Dr. Garwin claimed to be the originator of the discovery.

b.        With respect to Defendant  s representation to the PTO that Dr. Garwin was the first to combine an antidiarrheal with simethicone, the Court found that Defendant failed to bring to the PTO attention that:

i.        Since 1974 the FDA had approved of the use of simethicone in combination with other pharmaceuticals;

ii.        By the time of Dr. Garwin  s claimed invention,

simethicone was a well-known and increasingly popular antiflatulent, sold commercially in more than twenty-five products;

iii.    The dosage regimen in the proposed patents to be issued to Dr. Garwin were not new.  Other marketed over-the-counter products contained the same amount of simethicone as proposed by Dr. Garwin.  Additionally, the amounts specified for loperamide by Dr. Garwin also were already used in several over-the-counter products;

iv.    At least as early as 1980, an Australian pharmaceutical reference publication included a reference to a product called Diareze which combined an antidiarrheal with simethicone;

v.    A patent existing at the time of Dr. Garwin s proposal, the Chavkin patent, already covered the combination of an antidiarrheal with simethicone; and

vi.    Another existing patent at the time, French Patent Publication 2,565,107, also covered the combination of an antidiarrheal with simethicone;

51.    Based on these facts, this Court invalidated the relevant claims in the patents for obviousness, finding that McNeil misled the PTO:

> During the course of the lengthy prosecution of the [ 505 and 054] patents, McNeil s attorneys made a number of erroneous representations. . . .  First, McNeil incorrectly argued to the Patent and Trademark Office ( PTO ) that Dr. Garwin had discovered the concurrence of diarrhea and flatulence . . . .  Dr. Garwin did not discover the concurrence of diarrhea and gas.  Moreover, . . . McNeil s attorneys failed to provide the Examiner with evidence that would have called into question McNeil s assertion that Dr. Garwin had discovered the concurrence of diarrhea and flatulence. . . .  Second, McNeil s attorneys permitted the Examiner to believe mistakenly that Dr. Garwin was the first to combine an antidiarrheal with simethicone.

<u>McNeil</u>, slip op. at 4-5.

## VII.
## <u>RELEVANT MARKET</u>

52.         During the Class Period, the relevant market was the manufacture and sale of Imodium  Advanced, and the geographic market was the United States and its territories.

51.         During the Class Period, Defendant s share of the relevant market was 100%, and Defendant maintained monopoly power in the relevant market during that time period.

## VIII.
## <u>MARKET EFFECTS</u>

53.         The acts and practices of Defendant, as herein alleged, had the purpose and effect of restraining competition unreasonably and injuring competition by preventing the entry of generic Imodium  Advanced products into the relevant market.  Defendant s exclusionary conduct unlawfully protected Imodium  Advanced from generic competition during the Class Period.

54.         But for McNeil s illegal conduct, Perrigo or another generic competitor would have begun marketing a generic version of Imodium  Advanced as early as October 1997.

55.         If Perrigo or another generic competitor had been able to enter the relevant market and compete with Defendant, End-Payors such as Plaintiff would have been free to substitute a lower-priced generic for the higher-priced brand name product.  A generic product can quickly and efficiently enter the marketplace at substantial discounts, generally leading to a significant erosion of the branded drug s sales within the first year.

56.         By preventing generic competitors from entering the market, Defendant injured Plaintiff and the other Class members in their business or property by causing them to pay more for Imodium  Advanced products than they otherwise would have paid.  Defendant s unlawful conduct deprived Plaintiff and other End-Payors of the benefits of competition that the antitrust laws and applicable state consumer protection laws were designed to preserve.

**IX.**
**COUNT I**
**Claim For Injunctive Relief Under Section 16 Of The Clayton Act**

57.          Plaintiff incorporates by reference the preceding allegations.

58.          The conduct of the Defendant as alleged in this Complaint, the operation of an unlawful combination and conspiracy, violates the antitrust laws of the United States.

59.          Defendant is presently engaged in illegal conduct to prevent the introduction into the U.S. marketplace of any generic version of Imodium   Advanced.  The illegal combination continues unabated.

60.          It is in the public interest to enjoin the Defendant from continuing to be engaged in illegal conduct, to prevent the introduction into the U.S. marketplace of any generic version of Imodium   Advanced.

61.          The conduct has fixed, raised, maintained, and stabilized at artificially high and non-competitive levels the price of loperamide and simethicone purchased by the Plaintiff and the Class.

62.          During the relevant period, members of the Class purchased substantial amounts of Imodium   Advanced from McNeil.  As a result of the illegal conduct of Defendant, members of the Class were compelled to pay, and did pay, substantially inflated prices for the loperamide and simethicone combination.  Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal conduct.  Members of the Class have in consequence sustained substantial losses and damage to their business and property in the form of, among others, overcharges.

63.          The Plaintiff and the Class will continue to be injured in their person and property by McNeil  s continuing conduct in violation of the antitrust laws of the United States. Injunctive relief is, therefore, appropriate under 15 U.S.C.   26.

**X.**
**COUNT II**
**Monopolization Under Federal Law**

64.          Plaintiff incorporates by reference the preceding allegations.

65.        Pursuant to U.S. patent laws, Defendant was given a lawful monopoly over sales of Imodium  Advanced drug products, but that monopoly was only lawful so long as the drug, or a method of its use, was fully covered by valid, unexpired patents.

66.        As described above, Defendant knowingly and willfully engaged in a course of conduct designed to extend their monopoly power.  This course of conduct included, *inter alia*, improperly filing a series of patents that merely replicated prior art in order to prevent Perrigo other potential generic manufacturers, from selling a generic version of Imodium Advanced.

67.        During the Class Period, Defendant possessed monopoly power in the relevant market.

68.        Defendant intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C.   2.

69.        Plaintiff and members of the Class have been injured in their business or property by reason of Defendant  s antitrust violation.  Their injury consists of paying higher prices for Imodium  Advanced than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent, and is the result of Defendant  s unlawful conduct.

70.        Plaintiff and members of the Class are likely to purchase Imodium Advanced again in the future.

71.        Defendant intended to prevent generic manufacturers from entering the Imodium  Advanced market by filing a series of patents replicating prior art.  Now faced with judicial determination that the relevant claims of these patents are invalid, Defendant could continue to prevent any generic company from entering the market while an appeal is pending.  Injunctive relief is, therefore, appropriate under 15 U.S.C.   26.

72.        Plaintiff seeks to enjoin Defendant from engaging in future anti-competitive practices concerning the manufacture, distribution or sale of Imodium  Advanced.  Plaintiff does not seek damages under Counts I and II.

73.        Plaintiffs and the Class have no adequate remedy at law.

## XI.
## COUNT III
## Monopolization Under State Law

74.        Plaintiff incorporates by reference the preceding allegations.

75.        As described above, Defendant knowingly and willfully engaged in a course of conduct designed to extend its monopoly power.  This course of conduct included, *inter alia*, improperly filing a series of patents that merely replicated prior art in order to prevent Perrigo and other potential generic manufacturers, from selling a generic version of Imodium Advanced.

76.        During the Class Period, Defendant possessed monopoly power in the relevant market.

77.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Arizona Revised Stat.    44-1401, et seq., with respect to purchases of Imodium   Advanced in Arizona by members of the Class.

78.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Cal. Bus. & Prof. Code    16700, et seq., with respect to purchases of Imodium   Advanced in California by members of the Class.

79.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of D.C. Code Ann.    28-45031, et seq., with respect to purchases of Imodium   Advanced in the District of Columbia by members of the Class.

80.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Fla. Stat.    501. Part II, et seq., with respect to purchases of Imodium   Advanced in Florida by members of the Class.

81.        Defendants has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Kan. Stat. Ann.    50-101, et seq., with respect to purchases of Imodium   Advanced in Kansas by members of the Class.

82.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of La. Rev. Stat.    51:137, et seq., with respect to purchases of Imodium   Advanced in Louisiana by members of the Class.

83.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Me. Rev. Stat. Ann. 10,   1101, et seq., with respect to purchases of Imodium   Advanced in Maine by members of the Class.

84.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Mass. Ann. Laws ch. 93A, et seq., with respect to purchases of Imodium   Advanced in Massachusetts by members of the Class.

85.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Mich.Comp.Laws Ann.      445.771, et seq., with respect to purchases of Imodium   Advanced in Michigan by members of the Class.

86.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Minn. Stat.      325D.52, et seq. with respect to purchases of Imodium   Advanced in Minnesota by members of the Class.

87.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Miss. Code Ann.      75-21-1, et seq., with respect to purchases of Imodium   Advanced in Mississippi by members of the Class.

88.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Nev. Rev. Stat. Ann.    598A., et seq., with respect to purchases of Imodium   Advanced in Nevada by members of the Class.

89.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1 et seq., with respect to purchases of Imodium   Advanced in New Jersey by members of the Class.

90.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of N.M. Stat. Ann.      57-1-1 et seq., with respect to purchases of Imodium   Advanced in New Mexico by members of the Class.

91.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of New York General Business Law    340, et seq., with respect to purchases of Imodium   Advanced in New York by members of the Class.

92.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of N.C. Gen. Stat.     75-1, et seq., with respect to purchases of Imodium   Advanced in North Carolina by members of the Class.

93.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of N.D. Cent. Code    51-08.1-01, et seq., with respect to purchases of Imodium   Advanced in North Dakota by members of the Class.

94.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of S.D. Codified Laws Ann.    37-1, et seq., with respect to purchases of Imodium   Advanced in South Dakota by members of the Class.

95.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Tenn. Code Ann.     47-25-101, et seq., with respect to purchases of Imodium   Advanced in Tennessee by members of the Class.

96.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Vt. Stat. Ann. 9,    2453, et seq., with respect to purchases of Imodium   Advanced in Vermont by members of the Class.

97.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of W.Va. Code      47-18-1, et seq., with respect to purchases of Imodium   Advanced in West Virginia by members of the Class.

98.        Defendant has intentionally and wrongfully maintained its monopoly power in the relevant market in violation of Wis. Stat.    133.01, et seq., with respect to purchases of Imodium   Advanced in Wisconsin by members of the Class.

99.        Plaintiff and members of the Class have been injured in their business or property by reason of Defendant  s antitrust violations alleged in this Count.  Their injury consists of paying higher prices for Imodium   Advanced-based drug products than they would have paid in the absence of those violations.  This injury is of the type the antitrust and consumer protection laws of the above States and the District of Columbia were designed to prevent and flows from that which makes Defendant  s conduct unlawful.

## XII.
## COUNT IV
## Unfair and Deceptive Trade Practices Under State Law

100.　　　　Plaintiff incorporates by reference the preceding allegations.

101.　　　　Defendant engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed in　102-146 when they obtained invalid patents in order to prevent Perrigo and other would-be competitors from marketing a generic version of Imodium　Advanced.　As a direct result of Defendant　s anticompetitive, deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and members of the Class were deprived of the opportunity to purchase generic Imodium　Advanced.

102.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat.　45.50.471, et seq.

103.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat.　44-1522, et seq.

104.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code　4-88-101, et seq.

105.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code　17200, et seq.

106.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat.　6-1-105, et seq.

107.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat.　42-110b, et seq.

108.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code　2511, et seq.

109.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code　28-3901, et seq.

110.　　　　Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat.　501.201, et seq.

111.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat.   10-1-392, et seq.

112.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat.   480, et seq.

113.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code   48-601, et seq.

114.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS   505/1, et seq.

115.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat.   50-623, et seq.

116.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat.   367.110, et seq.

117.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat.   51:1401, et seq.

118.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat.   207, et seq.

119.        Defendants has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code   13-101, et seq.

120.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.

121.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat.   445.901, et seq.

122.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat.   8.31, et seq.

123.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon s Missouri Stat.   407.010, et seq.

124.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code   30-14-101, et seq.

125.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat.   59-1601, et seq.

126.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat.   598.0903, et seq.

127.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat.   358-A:1, et seq.

128.        Defendant has engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J. Rev. Stat.   56:8-1, et seq.

129.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat.   57-12-1, et seq.

130.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law   349 et seq.

131.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat.   75-1.1, et seq.

132.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code   51-15-01, et seq.

133.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat.   1345.01, et seq.

134.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. 15   751, et seq.

135.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat.   646.605, et seq.

136.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat.   201-1, et seq.

137.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws.   6-13.1-1, et seq.

138.        Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws   39-5-10, et seq.

139.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. code Laws  37-24-1, et seq.

140.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code  47-18-101, et seq.

141.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code  17.41, et seq.

142.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code.  13-11-1, et seq.

143.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt.  2451, et seq.

144.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code  59.1-196, et seq.

145.     Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code.  19.86.010, et seq.

146.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code  46A-6-101, et seq.

147.     Plaintiff and members of the class have been injured in their business and property by reason of Defendant s anticompetitive, unfair, or deceptive acts alleged in this Count.  Their injury consists of paying higher prices for Imodium  Advanced-based prescription drug products than they would have paid in the absence of these violations.  This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendant s unlawful conduct.

**XIII.
COUNT V
<u>Unjust Enrichment Under State Law</u>**

148.     Plaintiff incorporates by reference the preceding allegations.

149.     Defendant has benefitted from its unlawful acts through the overpayments for Imodium  Advanced products by Plaintiff and other Class members and the increased profits resulting from such overpayments.  It would be inequitable for Defendant to be permitted to

retain the benefit of these overpayments, that were conferred by Plaintiff and retained by
Defendant.

150.        Plaintiff and members of the Class are entitled to the establishment of a
constructive trust consisting of the benefit to Defendant of such overpayments, from which
Plaintiff and the other Class members may make claims on a pro-rata basis for restitution.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant for the following
relief:

A.        A declaration that Defendant has committed the violations alleged herein;

B.        A judgment for the damages sustained by Plaintiff and the Class defined
herein, and for any additional damages, penalties and other monetary relief provided by
applicable law, including treble damages;

C.        Disgorgement of Defendant s unjust enrichment;

D.        An injunction preventing Defendant from engaging in future
anticompetitive practices concerning the manufacture, distribution or sale of Imodium
Advanced;

E.        The costs of this suit, including a reasonable attorneys  fee; and

F.        Such other and further relief as the Court deems just and proper.

| Dated: July __, 2002 | By:                                        |
|                      | Natalie A. Finkelman                       |
|                      |                                            |
|                      | SHEPHERD & FINKELMAN, LLC                  |
|                      | 117 Gayley Street, Suite 200               |
|                      | Media, PA  19063                           |
|                      | Telephone:  (610) 891-9880                 |
|                      | Facsimile:  (610 ) 891-9883                |

|  | Joseph R. Saveri<br>Eric B. Fastiff<br>LIEFF, CABRASER, HEIMANN &<br>  BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>Telephone:  (415) 956-1000<br>Facsimile:  (415) 956-1008 |
|  | Robert G. Eisler<br>LIEFF, CABRASER, HEIMANN &<br>  BERNSTEIN, LLP<br>780 Third Avenue, 48th Floor<br>New York, NY  10017-2024<br>Telephone:  (212) 355-9500<br>Facsimile:  (212) 355-9592<br><br>Attorneys for Plaintiff<br>Robert K. Alderman |

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

| Dated: July ___, 2002<br><br>Media, Pennsylvania | By:<br>    Natalie A. Finkelman<br><br>SHEPHERD & FINKELMAN, LLC<br>117 Gayley Street, Suite 200<br>Media, PA  19063<br>Telephone:  (610) 891-9880<br>Facsimile:  (610 ) 891-9883 |
| | Joseph R. Saveri<br>Eric B. Fastiff<br>LIEFF, CABRASER, HEIMANN &<br>   BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>Telephone:  (415) 956-1000<br>Facsimile:  (415) 956-1008 |
| | Robert G. Eisler<br>LIEFF, CABRASER, HEIMANN &<br>   BERNSTEIN, LLP<br>780 Third Avenue, 48th Floor<br>New York, NY  10017-2024<br>Telephone:  (212) 355-9500<br>Facsimile:  (212) 355-9592<br><br>Attorneys for Plaintiff<br>Robert K. Alderman |